No. 21-1739

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| MICHAEL L. SHAKMAN and PAUL M. LURIE, individually and on behalf of others similarly situated,<br><br>Plaintiffs-Appellees,<br><br>v.<br><br>JB PRITZKER, in his official capacity as Governor of the State of Illinois,<br><br>Defendant-Appellant. | Appeal from the U.S. District Court for the Northern District of Illinois, Eastern Division<br><br>No. 1:69-cv-02145<br><br>The Honorable Edmond E. Chang |

**DOCKETING STATEMENT**

Pursuant to Circuit Rule 3(c), Defendant-Appellant JB Pritzker, in his official capacity as Governor of the State of Illinois, files this docketing statement.

**A. District Court Jurisdiction**

1. In 1969, plaintiffs, an independent candidate seeking to be a delegate to the 1970 Illinois constitutional convention and one of his supporters, filed a class action complaint on behalf of independent candidates and voters in the Northern District of Illinois. *See Shakman v. Clerk of Cook Cnty.*, No. 20-1828, 2021 WL 1437195, at *1-2 (7th Cir. Apr. 16, 2021) ("*Shakman VI*"). The complaint asserted violations of the First, Fifth, and Fourteenth Amendments, and 42 U.S.C. §§ 1983,

1

1985, 1986, and 1988.  *See* Doc. 7140-6 at 16 (¶ 38).* The Illinois Governor was added as a defendant in 1972.  Doc. 376 at 1, 25-45.  Plaintiffs invoked the district court's subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.  Doc. 7140-6 at 2 (¶ 1(b)).

In 1972, plaintiffs and then-Governor Richard B. Ogilvie were among the parties who entered into a consent decree intended to resolve the plaintiffs' claims. *See* Doc. 6789-1, PageID#60183, at 3 (¶ E(1)) ("1972 Consent Decree").  The court retained jurisdiction to enforce the consent decree and to allow the parties to litigate (a) which positions should be exempt from the consent decree, (b) the extent to which political factors could be considered in hiring public employees, and (c) any remedial proceedings associated with these matters.  *Id.* at 3-4 (¶ H).  In the aftermath of the 1972 decree, other governmental entities entered into additional consent decrees and supplemental relief orders regarding patronage hiring in public employment, but the Governor did not.  These later decrees and orders imposed affirmative obligations on these entities meant to confer relief on a class of public-employee plaintiffs who had entered the case (and who had asserted claims against these entities).  The Governor remains bound only by the general prohibitions set out in the 1972 consent decree.

In 2014, forty-two years after entry of the decree, plaintiffs sought an order from the district court granting "supplemental relief" for conduct involving the Illinois Department of Transportation ("IDOT") that they alleged violated the 1972

---

* The district court's docket is cited as "Doc. __ at __."

consent decree. Doc. 3744. The court granted that motion and appointed a special master to investigate the allegations. Docs. 3989, 4020. It entered a subsequent order in 2017 expanding the scope of the special master's authority to include aspects of "exempt" employment at all agencies overseen by the Governor. Docs. 4798, 5004. The special master is in her seventh year at IDOT, and on May 1 will begin her fifth year overseeing exempt employment at agencies statewide.

In late 2019 the Governor began discussions with plaintiffs, the special master, and the Court regarding the vacatur of the consent decree with respect to the State. *See* Doc. 6712 at 2. Plaintiffs, however, took the position that vacatur was not appropriate, and in March 2020 asked the district court to clarify or expand the scope of the special master's duties, invoking its retention of jurisdiction under the 1972 consent decree. Doc. 6789 at 2. Plaintiffs specifically asked the Court to confer authority on the special master to "monitor[] the compliance of all agencies under the jurisdiction of the Governor with all the injunctive provisions of the Court's 1972 Decree and the supplemental relief orders and *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990)." *Id*. The Governor moved to vacate the consent decree, explaining that the State had implemented a durable remedy that had effectively prevented any violations of the 1972 decree or federal law for several years, and that changes in law and fact compelled termination of the decree. Doc. 6946. He simultaneously filed a cross-motion to terminate the special master's appointment, arguing that the tasks set forth in her Rule 53 appointment orders had been completed. Doc. 6947.

3

In an opinion issued on March 31, 2021, the district court denied the Governor's motions and granted in part and denied in part plaintiffs' motion, clarifying the scope of the special master's duties to add three new categories of tasks, including monitoring the State's implementation of its "Comprehensive Employment Plan" and its transition from a largely paper-based hiring system to a new electronic hiring system. Doc. 7370 at 1, 37-43.

2. The district court retained subject-matter jurisdiction to enforce the 1972 consent decree pursuant to the decree's express terms. 1972 Consent Decree 3-4 (¶ H). The consent decree directly followed the Court's opinion in *Shakman v. Democratic Organization of Cook County*, 435 F.2d 267 (7th Cir. 1970) ("*Shakman I*"), which held that plaintiffs' original complaint should not be dismissed for lack of standing.

As the Governor explained below, however, no plaintiff today is injured by the practices at issue in the proceedings below. The Court's holding in *Shakman I* rested on plaintiffs' argument that candidates for public office and their supporters suffered injury-in-fact when "patronage employees [were] forced to support the dominant political parties by donating to campaign funds and performing campaign work." Doc. 7104 at 29; *see also Shakman I*, 435 F.2d at 168 (same). But there is no allegation that the State continues any such practice today, or indeed that the State perpetuates *any* patronage practices that affect the rights of candidates and voters. Even if *Shakman I* were consistent with contemporary standing jurisprudence, it

4

did not confer standing on plaintiffs to address any and all alleged inadequacies in the State's hiring and employment practices—the focus of the proceedings below.

And *Shakman I* is not consistent with contemporary standing jurisprudence. As this Court has observed in the context of a separate post-1972 *Shakman* decree entered into between the plaintiffs and the City of Chicago, "significant changes" in the law of standing over the last half century have undermined the Court's holding in 1970, since plaintiffs may not "bring to the litigation the sort of concrete adverseness" that Article III demands. *O'Sullivan v. City of Chicago*, 396 F.3d 843, 868 (7th Cir. 2005) ("*Shakman III*"). Multiple courts have recognized that *Shakman I* sits uneasily with contemporary standing doctrine. *See, e.g.*, *Shakman v. Dunne*, 829 F.2d 1387, 1398 n.11 (7th Cir. 1987) ("*Shakman II*") (describing out-of-circuit authority expressing "serious reservations as to [the] correctness of *Shakman I*"); *Plotkin v. Ryan*, No. 99-cv-53, 1999 WL 965718, at *3 (N.D. Ill. Sept. 29, 1999) (explaining that "later decisions . . . cast considerable doubt as to the continuing validity of the *Shakman I* reasoning"), *aff'd*, 239 F.3d 882 (7th Cir. 2001).

Whatever the vitality of *Shakman I*'s core holding, that holding cannot support expansive federal court oversight of the State's hiring and employment practices by the present plaintiffs, who are not injured by those practices in a manner cognizable under Article III. *See Shakman III*, 396 F.3d at 868.

### B. Appellate Jurisdiction

The Governor filed a notice of appeal on April 26, 2021, Doc. 7404, which was timely because the district court's order challenged on appeal was entered on March 31, 2021, *see* 21 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).

This court has jurisdiction under 28 U.S.C. § 1292(a)(1). A consent decree operates as an injunction, and the denial of a motion to "dissolve [a] consent decree" is therefore "appealable" under § 1292(a)(1), as the Court has explained. *Bogard v. Wright*, 159 F.3d 1060, 1065 (7th Cir. 1998); *see Shakman VI*, 2021 WL 1437195, at *4 ("[T]he denial of a motion to modify a consent decree under Rule 60(b) is appealable under section 1292(a)(1)." (citation and quotation marks omitted)).

### C. Prior Appeals

The *Shakman* litigation has given rise to multiple prior appeals. This Court held in *Shakman I*, 435 F.2d 267, that plaintiffs had standing to assert "their own interests" as independent voters and candidates and to press their claims against Cook County and the City of Chicago, *id.* at 270. Seventeen years later, the Court held in *Shakman II*, 829 F.2d 1387, that, given the "significant[]" changes in the law of standing since *Shakman I*, the same plaintiffs lacked standing to challenge "the constitutionality of politically-motivated hiring practices," *id.* at 1393 (emphasis omitted). In two *Shakman* opinions issued in 2005, the Court again emphasized the changes in law since *Shakman I* was decided, holding in *Shakman III*, 396 F.3d 843, and *Shakman v. City of Chicago*, 426 F.3d 925 (7th Cir. 2005) ("*Shakman IV*"), that a court evaluating a defendant's motion to vacate one of the *Shakman* decrees

must "consider the significant changes in the law of voter standing since the entry of the" original decrees, as well as "principles of federalism," in doing so. *See Shakman III*, 396 F.3d at 854, 868; *Shakman IV*, 426 F.3d at 936. The Court added in *Shakman IV* that "the district court should be guided by the current law of standing to determine whether the class of voters has the necessary interest in this litigation to vigorously litigate and present the matter of political patronage to the court in the manner best suited for judicial resolution, or whether that task is best left to individuals directly impacted" by the alleged practices. *Id.* (cleaned up).

Two recent appeals have also challenged aspects of the proceedings below. This Court held last year in *Shakman v. Clerk of Circuit Court of Cook County*, 969 F.3d 810 (7th Cir. 2020) ("*Shakman V*") (No. 19-2772), that it lacked appellate jurisdiction over an appeal filed by a non-party to the case, Teamsters Local 700. The Court then issued an opinion recently in *Shakman VI*, 2021 WL 1437195 (No. 20-1828), upholding the denial of the Clerk of Cook County's motion to vacate the consent decree (and a separate consent decree to which the Governor is not a party) to the extent it applies to the Clerk, and dismissing for lack of appellate jurisdiction the Clerk's challenge to the appointment of a special master. The Court cautioned, however, that it harbored "grave federalism concerns . . . with the fact that the Clerk of Cook County has been under the thumb of a federal consent decree for the last 50 years." *Id.* at *7. "Such entrenched federal oversight," the Court added, should have raised red flags long ago." *Id.* "It is time," the Court explained, "to get these cases off the federal docket." *Id.*

7

**D. Other Parties and Claims**

Other parties remain before the district court for purposes of enforcement of any applicable consent decrees and supplemental relief orders entered between the plaintiffs and defendants. The ongoing enforcement of those orders against other parties does not affect the appealability of the order challenged here because the order addresses only the claims against the Governor.

Dated: April 27, 2021

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

By: /s/ Alex Hemmer
ALEX HEMMER
Deputy Solicitor General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
(312) 725-3834
ahemmer@atg.state.il.us

# CERTIFICATE OF FILING AND SERVICE

I certify that on April 27, 2021, I electronically filed this Docketing Statement with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system.

All other participants in this case are CM/ECF users and will be served by that system.

/s/ Alex Hemmer
ALEX HEMMER