No. 21-1739

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| MICHAEL L. SHAKMAN and PAUL M. LURIE, individually and on behalf of others similarly situated,<br><br>        Plaintiffs-Appellees,<br><br>        v.<br><br>JB PRITZKER, in his official capacity as Governor of the State of Illinois,<br><br>        Defendant-Appellant. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division<br><br><br>No. 1:69-cv-02145<br><br><br>The Honorable EDMOND E. CHANG, Judge Presiding. |

**DEFENDANT-APPELLANT GOVERNOR JB PRITZKER'S OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT THE RECORD AND CROSS-MOTION FOR RECONSIDERATION**

Defendant-Appellant JB Pritzker, in his official capacity as Governor of the

State of Illinois, respectfully submits this combined response to plaintiffs' motion for

leave to supplement the record on appeal under Federal Rule of Appellate Procedure

10(e) and cross-motion for reconsideration of the Court's February 15, 2022 order

granting that motion.[1]  Plaintiffs' motion should have been denied.  Plaintiffs'

proffered documents—briefs filed by the plaintiffs themselves and the special master

concerning the State's renewed motion to terminate the consent decree—are plainly

---

[1]  Plaintiffs did not seek the State's position on the motion before filing it, and the Court granted the motion on the same day it was filed.  The State therefore had no opportunity to respond before the motion was granted.

1

not part of the record on appeal because they postdate the opinion on appeal by almost a year. And they show only that the same defects in the proceedings below the State has already described to this Court persist today.

1. Plaintiffs' motion should have been denied at the threshold. For one, plaintiffs failed to comply with Federal Rule of Appellate Procedure 10(e) and Circuit Rule 10(b), which require parties seeking to supplement the appellate record to file any such motion in the district court before filing it with this Court. *See* Fed. R. App. P. 10(e)(1); Circuit Rule 10(b). Plaintiffs did not do so. That alone warrants denial of the motion. *Cf. Gallo v. Mayo Clinic Health Sys.-Franciscan Med. Ctr., Inc.*, 907 F.3d 961, 964 (7th Cir. 2018) ("We instructed Gallo to present her motion to the district court in the first instance as required by" Rule 10(e)(1) and Circuit Rule 10(b).).

In any event, plaintiffs' motion also should have been denied because the documents plaintiffs seek to introduce postdate the entry of the opinion on appeal before the Court and thus are plainly not part of the appellate record. Federal Rule of Appellate Procedure 10(e) allows a party to supplement the record on appeal if it believes there is an "omission or misstatement" in the record forwarded to the court of appeals. Fed. R. App. P. 10(e)(2). Its purpose is to "ensure that the record reflects what really happened in the district court, . . . not to enable" the parties to "add new material to the record." *Gallo*, 907 F.3d at 964.

Plaintiffs' motion does not meet that standard. As the Court is aware, this appeal concerns an opinion entered by the district court in March 2021 resolving the State's *first* motion to terminate, filed by the State in November 2020. Plaintiffs seek

to "supplement the record" on appeal, however, with the briefs on the State's *second* motion to terminate, which were filed between eight and eleven months after the resolution of the State's first motion. That request transparently does not satisfy Rule 10(e). *See Hirmiz v. New Harrison Hotel Corp.*, 865 F.3d 475, 476 (7th Cir. 2017) ("[N]ew evidence may not be presented on appeal.").

2.     Plaintiffs seek to circumvent Rule 10(e) by asserting that their own briefs (and the special master's) are relevant because they correct "misstatements" made by the State. Mot. 1. That assertion is false and misleading. Plaintiffs' and the special master's briefs do not show evidence of "political discrimination," and thus there is no "misstatement" to correct. *Id.* at 3. Indeed, these briefs show no more than the same defects in the proceedings the State has already identified.

To start, the briefs underscore the extent to which the district court's expansive reading of the consent decree has transformed these proceedings into a vehicle for across-the-board oversight of state hiring, exceeding the scope of the 1972 consent decree. As the State has explained, and as the parties discussed at length at oral argument, the 1972 decree does not encompass "hiring": The parties reserved that issue for future litigation, and plaintiffs never obtained a judgment on it against the State (as they did with other *Shakman* defendants). Reply 1-6; AT Br. 23-27. But the centerpiece of the special master's sur-reply (on which plaintiffs principally rely)—a report describing various procedural issues associated with hiring at the Illinois Capital Development Board ("CDB")—focuses entirely on hiring. Doc. 7794 at 18-68.

The special master's sur-reply likewise shows that plaintiffs' own attempt to explain the hiring exclusion is a sham. Plaintiffs' argument is that the decree covers "internal" hiring (i.e., the promotion or transfer of current employees) but not "external" hiring (i.e., the hiring of non-employees). AE Br. 20, 25. They told the Court in December that the decree "does not cover external hiring," Oral Arg. 18:32, explained that they were "not challenging . . . external hiring," *id.* at 18:28, and even offered to "clarify" below that "the special master should not look at external hiring," *id.* at 28:39; *see also id.* at 20:00 (the special master "has been focused on . . . internal hiring"). But the issues described by the special master relate only to the hiring of external candidates, not internal candidates. Plaintiffs concede that fact, but defend the special master's focus as appropriate because these jobs *could* have been filled by current employees. Mot. 2. But that is true of every hiring decision made by the State and its employees. In the end, then, plaintiffs' proposed distinction between "internal" and "external" hiring does no work at all.

In any event, the special master's brief categorically does not show "evidence of unlawful political discrimination," as plaintiffs assert. Mot. 2. The large majority of the special master's findings show exactly the same kind of procedural mistakes— failure to follow aspects of state hiring policies and, in some instances, the Personnel Code—that plaintiffs and the special master described in prior filings. *See, e.g.*, Doc. 7794 at 59-60 (describing HR employee's failure to pull an "open competitive list," i.e., a list of individuals qualified for a vacancy but who had not applied); *id.* at 61-62 (describing HR employee's failure to seek prior approval before interviewing "small

4

pool" of qualified candidates); *id.* at 63 (describing HR employee's "delay in providing . . . hiring paperwork" to CMS). These procedural errors occurred in 2020 and early 2021 under the management of an HR manager who was replaced more than a year ago. The State is working actively to ensure that all its HR employees are trained in order to prevent future procedural errors. But such mistakes are transparently not *Rutan* violations (or violations of any other federal law) and cannot justify continued federal-court oversight over day-to-day aspects of state hiring. *See Horne v. Flores*, 557 U.S. 433, 454 (2009).

The special master's speculation to the contrary, Doc. 7794 at 65-67, is just that—speculation. The special master argues that the procedural errors led to the hiring of what she describes as "favored" candidates. *Id.* at 65. But she concedes that she has not found "'conclusive evidence that patronage . . . played a role'" in these decisions. *Id.* at 67. That seriously understates the matter. In fact, none of the 3,000 documents the special master reviewed or the decision-makers that she interviewed on the record before a court reporter offered *any* evidentiary basis to "infer[]," *id.*, that the four external candidates in question were hired because of supposed "political connections" (or, in one case, "nepotism"—a charge the State disputes, but which has no connection to federal law and so has no bearing here). The special master speculates that these individuals were "favored," *id.* at 65, but neither she nor plaintiffs offer even the most rudimentary theory of who "favored" them, how, or why. And the evidence elicited by the special master disproves such speculation: Each of the decision-makers the special master interviewed (the now-

former HR manager who supervised the hiring, the CMS employee who separately "graded" the hires' applications, and the CDB employee who interviewed the hires) testified that he or she did not know who the external hires were and thus had no reason to "favor" them. The special master neither acknowledges that fact in her brief nor explains how, given that, any "discrimination" could have occurred. The State intends to file a supplemental brief before the district court responding to the special master's sur-reply in detail. In the end, though, the special master's brief is just more of the same—an attempt to justify continued federal-court oversight over state hiring based on procedural errors and speculation rather than documented violations of federal law.

For that reason, the "misstatements" plaintiffs describe, Mot. 1, do not exist. Plaintiffs and the special master have not found *any* "evidence of unlawful political discrimination" at all, much less evidence that the State was aware "in mid-2021" of such discrimination. *Id.* at 3. Plaintiffs' accusation to the contrary—implying that the Governor's staff was aware of violations of federal law last year that they did not disclose to counsel or to the Court—is without foundation. The procedural issues described in the special master's report were identified by CMS, were investigated in the ordinary course by that agency, and were disclosed to the special master, as her report makes clear. Doc. 7794 at 64. No state employee acted improperly in investigating or reporting them, and the State did not "misstate" anything to this Court. Plaintiffs do not genuinely contest this. They simply want to use Rule 10(e)

to raise matters to this Court that do not belong here and to reprise arguments that the State has explained lack merit.

Plaintiffs filed this motion to proclaim that the special master has found "evidence" of "unlawful political discrimination." Mot. 2. But—even setting aside the motion's procedural deficiencies, *supra* pp. 2-3—the special master has found no such thing. Plaintiffs' goal is to deter the Court from taking action on the appeal and to permit the proceedings below to continue. Instead, the briefs below show why these proceedings below rest on an unduly expansive view of the consent decree and why the Court's intervention is needed to curb the intrusion that they pose on the State's management of its own affairs.

For these reasons, the Court should reconsider its February 15, 2022 order and deny plaintiffs' motion to supplement the record.

Dated: February 16, 2022

Respectfully submitted,

KWAME RAOUL
Attorney General
State of Illinois

/s/ Alex Hemmer
ALEX HEMMER
Deputy Solicitor General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-5526
alex.hemmer@ilag.gov

Attorneys for Defendant-Appellant

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this combined opposition and cross-motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1,690 words (excluding the parts exempted by Federal Rule of Appellate Procedure 32(f)). This brief also complies with the typeface requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5), and Circuit Rule 32(a), because it has been prepared in a proportionally spaced typeface (12-point Century Schoolbook BT) using Microsoft Word.

/s/ Alex Hemmer
ALEX HEMMER

February 16, 2022

# CERTIFICATE OF FILING AND SERVICE

I certify that on February 16, 2022, I electronically filed this opposition with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system.

All other participants in this case are CM/ECF users and will be served by that system.

/s/ Alex Hemmer
ALEX HEMMER